# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MSCM HOLDINGS, INC., a Maryland corporation, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) ) ) | |
| v. | ) ) | C.A. No. 2022-0959-SG |
| PCS-MOSAIC HOLDINGS, LLC, a Delaware limited liability company and MOSAIC TECHNOLOGIES GROUP, LLC, a Maryland limited liability company, | ) ) ) ) ) ) ) | |
| Defendant/Counterclaim and Third Party Plaintiffs, | ) ) ) ) | |
| v. | ) ) | |
| MICHAEL T. GRIER, THE GRIER 2018 FAMILY TRUST U/A/D APRIL 23, 2018, THE GRIER CHARITABLE LEAD ANNUITY TRUST U/A/D APRIL 23, 2018, and SANDRA R. GRIER, AS TRUSTEE OF THE GRIER 2018 FAMILY TRUST U/A/D APRIL 23, 2018, AND TRUSTEE OF THE GRIER CHARITABLE LEAD ANNUITY TRUST U/A/D APRIL 23, 2018, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third Party Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: April 18, 2024
Date Decided: July 31, 2024

Alan D. Albert and Stephen D. Dargitz, O'HAGAN MEYER PLLC, Wilmington, Delaware; OF COUNSEL: Charles M. Sims and C. Quinn Adams, O'HAGAN MEYER, PLLC, Richmond, Virginia, *Attorneys for Plaintiff/Counterclaim Defendant MSCM Holdings, Inc. and Third-Party Defendants Michael T. Grier, The Grier 2018 Family Trust u/a/d April 23, 2018, The Grier Charitable Lead Annuity Trust u/a/d April 23, 2018, and Sandra R. Grier.*

John G. Harris, BERGER HARRIS LLP, Wilmington, Delaware, *Attorney for Defendant/Counterclaim and Third-Party Plaintiffs PCS-Mosaic Holdings, LLC and Mosaic Technologies Group, LLC.*

**GLASSCOCK, Vice Chancellor**

This rather complex contract action is currently before me on relatively simple motions to dismiss, both rooted in process. To oversimplify the underlying action, the Plaintiffs are sellers of a company, Mosaic,[1] Inc., under an Equity Purchase Agreement (the "EPA"). Defendants are the buyers. In the EPA, Defendant-buyers agreed to provide post-closing financials, which in turn would control whether a part of the purchase price held back by the buyer—the $230,000 Working Capital Holdback—was payable to Plaintiff-sellers. Plaintiffs seek declaratory and equitable relief: the contractually promised financials and, if warranted, release of the holdback amount.

Defendants have counterclaimed, seeking indemnification for what they characterize as breaches of representations and warranties in the EPA, by the sellers. They have also brought a third-party complaint under Chancery Court Rule 14, against an individual and entities, seeking contractual indemnification and damages. With respect to the third-party complaint, Rule 14, I find, does not provide a basis to join these issues in this action.[2] With respect to the counterclaim, I find that the EPA mandates a dispute-resolution mechanism, with which Counterclaim Plaintiffs failed to comply. Accordingly, the Motions to Dismiss must be granted.

---

[1] "Mosaic," of course, can refer to something embodying the attributes of the biblical prophet Moses; it may also mean representational art rendered through the deliberate placement of shards or tiles. The complaint does not relate the derivation of the name Mosaic, Inc.

[2] In fact, these disparate parts and parties combined into a single suit would create a kind of legal chimera; a chimera, I note, is another meaning of "mosaic." *See Mosaic*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/mosaic (last visited July 31, 2024).

My reasoning follows, preceded by a curtailed, but nonetheless tedious, explanation of the various parties and the facts surrounding their contractual obligations.

## I. BACKGROUND

*A. Factual Background*[3]

1. <u>The Parties</u>

Defendant/Counterclaim Plaintiff and Third-Party Plaintiff PCS-Mosaic Holdings LLC ("PCS-Mosaic" or "Buyer") is a Delaware limited liability company.[4]

Defendant/Counterclaim Plaintiff and Third-Party Plaintiff MOSAIC Technologies Group, LLC ("Mosaic LLC," together with PCS-Mosaic, "Third-Party Plaintiffs") is a Maryland limited liability company.[5]

Plaintiff/Counterclaim-Defendant MSCM Holdings, Inc. ("MSCM" or "Seller") is a Maryland limited liability company.[6]

Third-Party Defendant Michael T. Grier is a resident of the State of Maryland and a previous owner of Mosaic Technologies Group, Inc. ("Mosaic Inc.").[7]

---

[3] I limit the factual background to the allegations that are necessary for my analysis.

[4] Def.-Countercl. Pl. PCS-Mosaic Hldgs., LLC's First Am. Verified Countercl. and Third-Party Pls. PCS-Mosaic Hldgs., LLC and Mosaic Techs. Gp., LLC's Third-Party Compl. ¶ 1, Dkt. No. 10 (the "Third-Party Compl.").

[5] *Id.* ¶ 2.

[6] *Id.* ¶ 3.

[7] *Id.* ¶¶ 4, 15.

Michael served as the Chief Executive Officer of PCS-Mosaic and Mosaic LLC until January 18, 2022.[8]

Third-Party Defendant the Grier 2018 Family Trust u/a/d April 23, 2018 ("Grier Family Trust") also previously owned Mosaic Inc.[9]

Third-Party Defendant the Grier Lead Annuity Trust u/a/d April 23, 2018 ("Grier Charitable Trust") is also a previous owner of Mosaic Inc.[10]

Third-Party Defendant Sandra R. Grier (together with Michael T. Grier, the Grier Family Trust, and the Grier Charitable Trust, the "Third-Party Defendants") is a resident of the State of Maryland and a trustee of the Grier Family Trust and Grier Charitable Trust.[11] Sandra served as the Chief Experience Officer for Mosaic LLC and PCS-Mosaic.[12]

### 2. The Equity Purchase Agreement

On March 6, 2020, PCS-Mosaic, Mosaic LLC, MSCM, Michael,[13] the Grier Family Trust, and the Grier Charitable Trust entered into an equity purchase agreement (the "EPA") whereby PCS-Mosaic agreed to purchase a 100% equity

---

[8] *Id.* ¶ 160.
[9] *Id.* ¶ 5.
[10] *Id.* ¶ 6.
[11] *Id.* ¶ 7.
[12] *Id.* ¶ 167.
[13] The use of first names is to avoid confusion between Michael and Sandra Grier. I mean no familiarity or disrespect.

interest in Mosaic Inc.[14] Mosaic Inc. was a government contractor providing software and IT services to various government agencies.[15]

Under the EPA, PCS-Mosaic paid MSCM $19 million in cash along with equity interests in PCS-Mosaic and an unsecured promissory note with an aggregate principal amount of $4 million (the "Note").[16] The EPA provided that PCS-Mosaic would hold back sums from the cash consideration to be paid at closing, including $230,000 (the "Working Capital Holdback Amount").[17] The EPA also provided for a Post-Closing Purchase Price Adjustment based upon a final determination of working capital, indebtedness, transaction expenses, and cash amounts at closing.[18] In the EPA, MSCM and the Third-Party Defendants made certain representations and warranties, including representations regarding Mosaic's compliance and efforts to comply with applicable law.[19]

### 3. Michael's Employment with Mosaic LLC

On March 6, 2020, the same day that the EPA was executed, Michael executed an Employment Agreement with Mosaic LLC and PCS-Mosaic, whereunder he was employed as the Chief Executive Officer of Mosaic LLC and PCS-Mosaic.[20] In late

---

[14] Third-Party Compl. ¶ 15.
[15] *Id.* ¶ 17.
[16] *Id.* ¶ 18.
[17] *Id.* ¶ 19.
[18] *Id.* ¶ 21.
[19] *Id.* ¶¶ 22, 67.
[20] *Id.* ¶ 160.

4

2021, two investigations by PCS-Mosaic's Board of Managers' Audit Committee revealed that Michael had misappropriated funds by causing Mosaic LLC to pay him compensation in excess of the amount authorized in his Employment Agreement.[21] Based on these findings, the Board of Managers terminated Michael for cause on January 18, 2022.[22]

### 4. The Maryland Action

On February 18, 2022, Michael filed an action against PCS-Mosaic and others (the "Maryland Action") in the Circuit Court for Howard County, Maryland (the "Maryland Court").[23]  Among other things, Michael asserted a cause of action for declaratory judgment that PCS-Mosaic's alleged breaches of the EPA and the Note excused Michael from complying with restrictive covenants in the Employment Agreement.[24]  On July 25, 2023, the Maryland Court dismissed Michael's cause of action for declaratory judgment.[25]

### B. Procedural Background

MSCM filed its complaint against the Mosaic Parties on October 25, 2022 (the "Complaint").[26]  The Complaint asserted two counts: (1) breach of the EPA for

---

[21] *Id.* ¶ 166.
[22] *Id.*
[23] *Id.* ¶ 170.
[24] *Id.* ¶¶ 171–72.
[25] *See* Letter from John G. Harris, Esq. to the Honorable Sam Glasscock III dated July 27, 2023, Dkt. No. 30.
[26] *See* Verified Compl. of MSCM, Dkt. No. 1.

failing to provide MSCM with certain post-closing financial statements and (2) specific performance seeking an order compelling the Mosaic Parties to provide MSCM with the required post-closing financial statements.[27] MSCM contends that these post-closing financial statements are necessary for the parties to determine the post-closing purchase price adjustment, as required by the EPA.[28] If this adjustment causes the purchase price to increase, MSCM seeks an order directing the Mosaic Parties to pay the Working Capital Holdback Amount.[29]

On March 3, 2023, the Mosaic Parties answered the Complaint.[30] Subsequently, the Mosaic Parties filed their counterclaims against MSCM and third-party complaint against the Third-Party Defendants.[31] On March 28, 2023, the Mosaic Parties filed their first amended counterclaims against MSCM and third-party complaint against the Third-Party Defendants (the "Third-Party Complaint").[32] The Third-Party Complaint asserts ten counts: Counts 1–5 assert breaches of contract against MSCM and the Third-Party Defendants, which are related to various representations and warranties in the EPA; Counts 6–7 assert breach of the EPA's

---

[27] Compl. ¶¶ 44–53.
[28] *See* Compl. ¶ 47; *see also* 2024.04.04 Letter to the Ct. Clarifying Mot. to Dismiss Position 1–2, Dkt. No. 37 ("MSCM's Suppl. Letter").
[29] *See* Compl., Prayer for Relief ¶ C; *see also* MSCM's Suppl. Letter 1–2.
[30] *See* Def. PCS-Mosaic Hldgs., LLC's Answer to Verified Compl. and Affirmative Defenses, Dkt. No. 8.
[31] Def.-Countercl. Pl. PCS-Mosaic Hldgs., LLC's Verified Countercl. and Third-Party Pls. PCS-Mosaic Hldgs., LLC and Mosaic Techs. Gp., LLC's Third-Party Compl., Dkt. No. 9.
[32] *See* Third-Party Compl.

exclusive forum selection provision and seeks specific performance of that provision against Michael; Counts 8–9 state claims for breach of the Note's exclusive forum selection provision and seeks specific performance of that provision against Michael; and Count 10 seeks specific performance against MSCM and the Third-Party Defendants to provide certain financial statements.[33]

On May 10, 2023, MSCM and the Third-Party Defendants moved to dismiss the Third-Party Complaint in its entirety.[34] The parties finished briefing this motion on June 27, 2023.[35] I heard oral argument on April 2, 2024, and requested that the parties supplement their submissions to explain the type of relief sought in the Complaint and what impact, if any, the Maryland court's decision to dismiss Michael's declaratory judgment cause of action had on Counts 6–9 in the instant matter.[36] The parties filed those requested submissions and I consider the matter submitted as of April 18, 2024.[37]

---

[33] *Id.* ¶¶ 174–268.

[34] *See* MSCM – Opening Br. Supp. Mot. to Dismiss, Dkt. No. 16 ("MSCM/TPDs' OB").

[35] *See* MSCM Reply Br., Dkt. No. 29 ("MSCM/TPDs' RB").

[36] *See* Judicial Action Form re Mot. to Dismiss before Vice Chancellor Sam Glasscock dated 4.2.24, Dkt. No. 38.

[37] *See* Letter to Counsel, Dkt. No. 42. I note that the Mosaic Parties went beyond the scope of the supplemental briefing that I requested to raise several new arguments regarding the EPA's dispute resolution process, while not fully addressing the questions I asked during oral argument regarding Counts 6–9. *See* Suppl. Letter Submission Further Opp'n Mot. to Dismiss 1–10, 13, Dkt. No. 40 ("Mosaic Parties' Suppl. Letter"). I will not consider the Mosaic Parties' new arguments regarding the EPA's dispute resolution process because they are untimely and have been deemed waived for failure to raise these arguments when briefing the motion. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefs are deemed waived.").

## II. ANALYSIS

The Mosaic Parties state that they will voluntarily dismiss Count 10[38] and all parties to this action agree that the Maryland court's decision to dismiss Michael's count for declaratory judgment has mooted Counts 7 and 9.[39] What remains is MSCM and the Third-Party Defendants' motion to dismiss the remaining counts, Counts 1–5, for breach of representations and warranties contained in the EPA, and Counts 6 and 8, which seek attorneys' fees from Michael for filing suit in Maryland. To the extent these counts are brought against the Third-Party Defendants collectively or Michael individually, the parties dispute whether the Third-Party Defendants have been properly joined under Court of Chancery Rule 14.[40] With respect to the counterclaim asserted against MSCM, the parties dispute whether the EPA has a dispute resolution process that the Mosaic Parties were required to follow prior to filing their counterclaims.[41]

### A. Application of Rule 14 to the Third-Party Complaint

Defendants assert a right to bring third-party claims here under Chancery Court Rule 14. That rule seeks to promote judicial and litigants' economy by bringing, in a single action, third-party claims where the third party "is or may be

---

[38] *See* PCS-Mosaic Hldgs., LLC and Mosaic Techs. Gp., LLC's Answering Br. Opp'n Mot. to Dismiss 29 n.10, Dkt. No. 26 ("Mosaic Parties' AB").

[39] *See* MSCM's Suppl. Letter 2 n.1.

[40] MSCM/TPDs' OB 5–6; Def.-Countercl. and Third-Party Pls.' Answering Br. Opp'n Mot. to Dismiss by Countercl. Def. and Third Party Defs. 27–30, Dkt. No. 27 ("Mosaic's AB").

[41] MSCM/TPDs' OB 7–9; Mosaic's AB 14–18.

liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."[42] Obviously, where a defendant may be liable to a plaintiff and also has a right to compel a third party to make the defendant whole for those damages, efficiency is promoted by joinder of the third-party suit.

The Third-Party Defendants here ask that this Court dismiss all actions against them in the Third-Party Complaint, specifically Counts 1–5, 6, and 8, because none of the Third-Party Defendants are potentially liable to the Mosaic Parties in the event that the Mosaic Parties are found to be liable to MSCM, as required to bring a third-party complaint under Court of Chancery Rule 14.[43] In response, the Mosaic Parties assert that Counts 1–5 state claims for indemnification from the Third-Party Defendants and policy considerations dictate against dismissing the Third-Party Complaint.[44]

Court of Chancery Rule 14(a) states in relevant part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause process and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.[45]

---

[42] Ct. Ch. R. 14(a).
[43] MSCM/TPDs' OB 5–6.
[44] Mosaic's AB 27–30.
[45] Ct. Ch. R. 14(a).

"[T]he accepted purpose (as well as the limitation) of Rule 14 is to allow a defending party an opportunity in the same litigation to 'pass on' all or part of the claim against it to others who might be responsible."[46] A properly asserted third-party claim is one where "the third party's liability must be derivative of the defendant's liability to the plaintiff."[47]

Here, the Complaint avers that the Mosaic Parties breached the EPA by failing to provide MSCM with certain post-closing documents and seeks equitable relief in the form of an order granting specific performance to cause the Mosaic Parties to provide MSCM with the requested documents.[48] The Third-Party Complaint filed by the Mosaic Parties, however, seeks monetary damages from the Third-Party Defendants.[49] While the Mosaic Parties may be correct that Counts 1–5 are general indemnification claims due to the contractual rights of setoff and recoupment under the EPA and the Note,[50] *the Complaint does not invoke these contractual rights*. The

---

[46] *State v. Dineen*, 1980 WL 6409, at *2 (Del. Ch. Apr. 17, 1980).
[47] *Tuscan Constr., Inc. v. Capaldi*, 2016 WL 3212491, at *1 (Del. Ch. May 24, 2016) (citing *Dineen*, 1980 WL 6409, at *2).
[48] *See* Compl., Prayer for Relief.
[49] *See* Third-Party Compl. ¶¶ 182, 191, 201–02, 212–13, 220, 229, 249; Third-Party Compl., Prayer for Relief ¶ (i).
[50] Mosaic's AB 28.

10

Complaint seeks equitable relief, for which the Mosaic Parties cannot "setoff"[51] or seek "recoupment"[52] against the Third-Party Defendants.

Moreover, even by equitable analogy to a Rule 14 third-party claim, the "pass-through" function of Rule 14 cannot operate here. Such an analog would require the Mosaic Parties to be able to have the Third-Party Defendants perform the Mosaic Parties' obligations if the Mosaic Parties are found liable to MSCM.[53] If the Mosaic Parties are found liable to MSCM, the Mosaic Parties will be ordered to turn over certain financial documents, as required by the EPA. It is unclear to me how the Mosaic Parties' potential obligation to provide MSCM with the requested financial documents is one that they can seek the Third-Party Defendants to perform on the Mosaic Parties' behalf. The Mosaic Parties have not explained how this obligation may be borne by the Third Party Defendants, nor have the Mosaic Parties argued that *any* count asserted in the Third-Party Complaint is derivative of the Mosaic Parties' potential liability to MSCM, as is required by the plain language of Rule 14.[54]

---

[51] *See CanCan Dev., LLC v. Manno*, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011) (citations and internal quotations omitted) (explaining that "[a] set-off is a counterdemand which a defendant holds against a plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action. A claim for set-off is an independent action which may be raised as a counterclaim.").

[52] *See TIFD III-X LLC v. Fruehauf Produc., LLC*, 883 A.2d 854, 859 (Del. Ch. 2004) (citations and internal quotations omitted) (explaining that "[r]ecoupment is a common-law, equitable doctrine that permits a defendant to assert a defensive claim aimed at reducing the amount of damages recoverable by a plaintiff.").

[53] *See Tuscan Constr., Inc.*, 2016 WL 3212491, at *1.

[54] *See* Mosaic's AB 28.

While the Mosaic Parties maintain that the Court should not dismiss the Third-Party Complaint because dismissing it would be judicially inefficient and contradict Rule 14's purpose of avoiding circuity of actions,[55] Rule 14 functions both to promote efficiency *and* as a limitation: it mandates that the Third-Party Complaint state proper third-party claims to avoid dismissal.[56] The Third-Party Complaint has failed to state a proper third-party claim whereby the Third-Party Defendants could be potentially liable to the Mosaic Parties if the Mosaic Parties are found liable to MSCM. Therefore, the Third-Party Complaint must be dismissed.

*B. The Counterclaims*

The Mosaic Parties have also asserted Counts 1–5 against MSCM as counterclaims (the "Counterclaims").[57] The Counterclaims assert breach of contract claims arising out of alleged breaches of representations in the EPA related to: (1) Section 2.15(c) ("Tax Matter"); (2) Sections 2.12 and 2.13 ("Financial Statements" and "Insolvency," respectively); (3) Section 2.8 ("Compliance with Laws"); (4) Section 2.20(b) ("Employee Benefits"); and (5) Section 2.26(f)(i) ("Government Contract Matters").[58] The parties do not dispute that, by bringing Counterclaims, the Mosaic Parties are seeking indemnification from MSCM. Rather, the parties

---

[55] *Id.* at 28–29.
[56] *See Dineen*, 1980 WL 6409, at *2.
[57] *See* Third-Party Compl. ¶¶ 174–220.
[58] *See id.*

12

dispute whether the EPA contains a dispute resolution mechanism applicable to the Counterclaims that must be followed before a party can bring suit.

MSCM seeks dismissal of the Counterclaims because the Mosaic Parties failed to comply with the EPA's dispute resolution procedure set out in Section 7.3, which provides the exclusive remedy for these Counterclaims. Therefore, per MSCM, the Mosaic Parties are barred from bringing suit.[59] The Mosaic Parties assert that the EPA's dispute resolution procedure set out in Section 1.4(a) is inapplicable to the Counterclaims and, to the extent the EPA contains an applicable dispute resolution procedure, the Third-Party Complaint itself complies with the dispute resolution procedure.[60]

Delaware courts generally promote self-ordering via enforcement of contracts. Accordingly, our courts routinely enforce contractually agreed upon pre-suit dispute resolution mechanisms.[61] To determine whether the Counterclaims are subject to judicial determination here, I must first determine if the Mosaic Parties were contractually required to comply with a pre-suit dispute resolution mechanism before bringing the Counterclaims.[62] If so, I must next decide whether the Mosaic Parties have complied with the applicable dispute resolution procedure. This is a

---

[59] *See* MSCM/TPDs' OB 7–9.
[60] Mosaic's AB 14–18.
[61] *Lennox Indus. Inc. v. Alliance Compressors LLC*, 2020 WL 4596840, at *3 (Del. Super. Aug. 10, 2020).
[62] *See Fernstrom v. Trunzo*, 2017 WL 6028871, at *3–4 (Del. Ch. Dec. 5, 2017).

matter of contract interpretation, which requires that parties be bound to the plain meaning of their agreement where "the language of a contract is clear and unequivocal."[63]

### 1. The Applicable Dispute Resolution Mechanism

The Mosaic Parties contend that the only dispute resolution mechanism in the EPA is laid out in Section 1.4(a) and defined in Schedule 1, which applies only to disputes regarding the determination of the final purchase price.[64] Under Section 1.4 of the EPA, if the parties are unable to resolve their disputes related to the closing balance sheet or the post-closing purchase price, then "the parties shall resolve the dispute by way of the Dispute Resolution Procedure."[65] The Dispute Resolution Procedure dictates that the parties are to submit their disputed items to independent accountants for resolution.[66] The Counterclaim disputes are not of this ilk.

In response, MSCM asserts that the EPA contains a second dispute resolution mechanism that applies to the Mosaic Parties' Counterclaims. Specifically, MSCM contends that under Section 7.3 of the EPA, claims for indemnification related to alleged breaches of representations in the EPA are subject to a dispute resolution procedure.[67] Under Article 7 of the EPA, MSCM is obligated to indemnify the

---

[63] *Allied Cap. Corp v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).
[64] Mosaic's AB 14–15.
[65] Compl., Ex. 1 § 1.4(e), Dkt. No. 1 (the "EPA").
[66] EPA, Schedule 1 at 4.
[67] MSCM/TPDs' OB 7–9; MSCM/TPDs' RB 6–9.

Mosaic Parties related to "any inaccuracy, misrepresentation or breach of any representation or warranty of the Company[.]"[68] Section 7.9 of the EPA states that:

> except for Fraud-Type Claims . . . , the rights of the Indemnified Parties to indemnification relating to this Agreement *shall be strictly limited* to those contained in this ARTICLE 7, and, such indemnification rights shall be the *exclusive remedies* of the Indemnified Parties with respect to any matter in any way relating to this Agreement or arising in connection herewith.[69]

If the Mosaic Parties seek indemnification under Article 7, Section 7.3 requires that the Mosaic Parties "deliver an Indemnity Claim Notice to the party from whom the indemnification is sought[.]"[70] Once the Indemnity Claim Notice is delivered, the party from whom indemnification is sought has twenty days to respond with an "Objection Notice."[71] Upon receipt of the Objection Notice, the parties are to "attempt in good faith to agree upon the rights of the respective parties with respect to each of such claims."[72] Either party "may pursue any and all legal or equitable remedies available to them under applicable [l]aw" only after an Objection Notice has been delivered.[73]

---

[68] EPA § 7.2(a)(i).

[69] *Id.* § 7.9 (emphasis added in part). While the Mosaic Parties argue that the Counterclaims state "Fraud-Type Claims" that are exempted from Section 7.9, the Mosaic Parties did not raise this in briefing and rather waited until their supplemental submission to the Court following oral arguments. *See* Mosaic Parties' Suppl. Letter 2–6. As noted above in note 37, this new argument is untimely and deemed waived.

[70] EPA § 7.3(a).

[71] *Id.* § 7.3(b).

[72] *Id.* § 7.3(c)(i).

[73] *Id.* § 7.3(c)(ii).

The parties agree that the Counterclaims, which assert alleged breaches of representations, are claims for indemnity.[74] While Article 7 does not invoke the defined term, "Dispute Resolution Procedure" applicable to claims corresponding to Section 1.4(a) and Schedule 1, Section 7.3 itself sets forth a pre-suit dispute resolution process for claims seeking indemnity. Per Section 7.9, this pre-suit dispute resolution process is the exclusive remedy available for a party seeking indemnification. Because the Mosaic Parties did not assert that the Counterclaims are Fraud-Type Claims exempt from Section 7.9,[75] Article 7 is the exclusive remedy available to the Mosaic Parties in asserting their indemnity claims against MSCM.

### 2. Whether the Mosaic Parties Complied with the Applicable Dispute Resolution Mechanism

Article 7 of the EPA requires that the Mosaic Parties comply with the pre-suit notice and objection procedure laid out in Section 7.3. According to MSCM, the Mosaic Parties failed to provide an Indemnity Claim Notice before the applicable Survival Date, so the Counterclaims should be dismissed.[76] The Mosaic Parties, however, contend that the Third-Party Complaint satisfies the requirements in

---

[74] *See* MSCM/TPDs' OB 7; Mosaic Parties' AB 16; MSCM/TPDs' RB 6.

[75] As noted above in note 37, to the extent the Mosaic Parties made the argument that its Counterclaims are "Fraud-Type Claims," they did so for the first time in a supplemental letter to the Court filed after oral argument, and the fraud assertion is deemed waived.

[76] MSCM/TPDs' OB 8–9; MSCM/TPDs' RB 8–9.

16

Section 7.3 to be considered an Indemnity Claim Notice that provides MSCM ample notice of the nature and scope of the Mosaic Parties' indemnification claims.[77]

As I interpret the dispute resolution mechanism set forth in Section 7.3 of the EPA, a party seeking indemnification under the EPA must first deliver an Indemnity Claim Notice and give the party from whom indemnification is sought the contractually agreed upon time to respond to the Indemnity Claim Notice with an Objection Notice. Only once the Objection Notice is delivered may the party seeking indemnification file suit to "pursue any and all legal or equitable remedies available to them under applicable Law."[78] The Mosaic Parties failed to deliver an Indemnification Claim Notice to MSCM *prior* to filing its Counterclaims in the Third-Party Complaint. While the Third-Party Complaint informs MSCM about the nature and scope of the Mosaic Parties' indemnification claims, the Third-Party Complaint does not comply with the *pre-suit* dispute resolution mechanism in Section 7.3 of the EPA.[79] Pursuant to Section 7.9, the Mosaic Parties' exclusive

---

[77] Mosaic Parties' AB 17. Although the Mosaic Parties contend that their counsel sent a dispute notice to MSCM on February 11, 2023, this contention was brought up for the first time in the Mosaic Parties' post-oral-argument supplemental letter. *See* Mosaic Parties' Suppl. Letter 7–10. The allegations in the Mosaic Parties' supplemental letter were not included in the Third-Party Complaint, nor were the arguments based on these allegations briefed in the Mosaic Parties' answering brief. *See generally* Third-Party Compl.; Mosaic Parties' AB. As explained above in note 37, these arguments are untimely and deemed waived. *See Dolphin Ltd. P'ship I, L.P. v. Gupta*, 2007 WL 315864, at *1 (Del. Ch. Jan. 22, 2007) ("The Court considers only allegations put forth in the complaints, not subsequent briefs, when it evaluates a motion to dismiss.").

[78] EPA § 7.3(c)(ii).

[79] *Id.* § 7.3.

remedy for the alleged breaches of the representations in the EPA asserted in their Counterclaims is an indemnity claim under the EPA. Because the Mosaic Parties did not satisfy the pre-suit notice and objection procedure as required under Section 7.3, the Counterclaims must be dismissed.[80]

### III. CONCLUSION

The Third-Party Defendants were not properly served under Court of Chancery Rule 14 and are accordingly dismissed from this action. The Mosaic Parties failed to satisfy the pre-suit notice and objection procedure required to bring indemnification claims against MSCM. Accordingly, the Counterclaims asserted against MSCM are dismissed. All claims are dismissed without prejudice, without limiting the right of MSCM to seek to demonstrate, should the Mosaic Parties attempt to enforce their breach of representation claims outside this action, that these claims are contractually untimely. The parties should submit a form of order implementing this Memorandum Opinion.

---

[80] *See Lennox Indus. Inc.*, 2020 WL 4596840, at *3 (dismissing claim for failure to first exhaust an applicable pre-suit dispute resolution process); *Fernstrom*, 2017 WL 6028871, at *3 (same).